Chief Judge David G. Estudillo

1
2
3
4
5
6
7        UNITED STATES DISTRICT COURT FOR THE
8        WESTERN DISTRICT OF WASHINGTON
                      AT TACOMA
9

10   UNITED STATES OF AMERICA,                NO. CR23-5128 DGE

11                 Plaintiff,                 UNITED STATES' SENTENCING
                                              MEMORANDUM
12        v.

13

14   CAMERON TAYLOR,

15                 Defendant.

16

17              **I.    INTRODUCTION**

18        Cameron Taylor sexually assaulted an unconscious female while stationed abroad

19   in the Army. He also molested a 5-year-old neighbor in the United States. And he

20   molested another 5-year-old child in his care. He closed her in a closet, unbuckled his

21   pants, pulled out his penis, and made the child touch it until he ejaculated. The child

22   screamed and tried to leave the closet, but Taylor would not let her. At other times,

23   Taylor kissed this child with his tongue, tried to pull down her pants and underwear while

24   in bed, and made her sit on his lap and kissed her again with his tongue. When law

25   enforcement later interviewed that child, Taylor coached her to lie. Taylor has now

26   pleaded guilty to one count of abusive sexual contact against a child under age 12, based

27   on his molestation of the 5-year-old child in the closet.

United States' Sentencing Memorandum - 1
*United States v. Taylor*, CR23-5128 DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

All the relevant 18 U.S.C. § 3553(a) factors support the mid-Guidelines sentence recommended by the Probation Office: 96 months in prison, followed by a lifetime term of supervised release. This reasonable sentence suffices but is no greater than necessary to protect the public from Taylor and to achieve the other statutory sentencing goals.

## II.    BACKGROUND

**A.    Taylor sexually assaults an unconscious woman and molests a 5-year-old neighbor child (MV2)**

Taylor left the Army in 2016 with a Less than Honorable Discharge. He was discharged as a plea agreement in lieu of a Court Martial for assault consummated by battery and assault upon a sentinel or lookout. PSR ¶ 35. The charges stemmed from Taylor's sexual assault of an unconscious female in Germany in 2015. PSR ¶ 35; Exhibit 1. Taylor tried to remove the woman's pants and underwear so he could rape her. Exhibit 2. Taylor told his then-wife that he would have sex with the unconscious woman. Taylor's then-wife physically stopped him from completing the rape, but Taylor hit and kicked her. Taylor also physically assaulted a fellow soldier while Taylor was being apprehended for the offense.

A few years later, once Taylor was back in the United States, he committed another sex crime—this time against a 5-year-old child. In August 2019, Taylor molested a 5-year-old neighbor girl, MV2, by making her touch his penis with her hand. PSR ¶ 32. This offense occurred during a playdate when MV2 was playing with Taylor's children. Exhibit 3. Taylor asked MV2 to come to his bedroom and massage him. Taylor told the child to massage his chest, then his inner thighs. MV2 said that Taylor unzipped his pants and exposed his penis. MV2 described the event in detail, saying that she had "both her hands in his shorts" and "felt skin and bones." She also described that she felt "a very strong bone in his legs and his private bone." MV2 started crying, left the room, and told her grandmother immediately. Police responded to the scene and arrested Taylor. Taylor admitted to being drunk during the incident and stated, "I pulled out my dick. I put it

United States' Sentencing Memorandum - 2
*United States v. Taylor*, CR23-5128 DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

away. I was hard, I admit that." PSR ¶ 10; Exhibit 4. Taylor and his wife separated soon

after that incident and divorced in 2021. PSR ¶ 10. Based on his abuse of MV2, Taylor

pleaded guilty to second-degree child molestation and was sentenced in 2022 to

18 months' confinement and 36 months' community custody. PSR ¶¶ 11, 32.

**B.     Taylor molests a 5-year-old child in his care (MV1)**

As part of the MV2 investigation, police also interviewed another 5-year-old child

who was in Taylor's care—MV1, the victim in the offense charged here. MV1 told police

that Taylor never made her feel uncomfortable and never exposed his skin to her. But

Taylor later admitted coaching MV1 to lie in that interview. PSR ¶ 11.

Taylor's effort to hide his abuse of MV1 ultimately failed. In August 2021, MV1's

mother was cleaning MV1's room when she found messages MV1 had written to her

cousin on an iPad a few weeks earlier. MV1 disclosed to her cousin that [Taylor] "locked

me in a closet with him and made me touch his dick. I screamed and cried till my thro[at]

hurt but no one heard me. I tried so many times to get out but he held the door

shut. He laughed about it . . . . It haunted me so much."



United States' Sentencing Memorandum - 3
*United States v. Taylor*, CR23-5128 DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

PSR ¶ 12. MV1's mother reported the messages to Army law enforcement, which referred the case to local authorities. *Id.*

In forensic interviews with local and federal investigators, MV1 disclosed the sexual abuse charged here. PSR ¶¶ 13–15. While MV1 was 5 or 6 years old (between June 2012 and May 2014), she was playing in a closet. Taylor came in behind her, shut the door, unbuckled his pants, pulled his penis out, held the door shut, and forced her to "do the thing." PSR ¶¶ 13–14. MV1 screamed to be let out, but Taylor "was laughing about it and just told me to do it." PSR ¶ 13. MV1 said that she "touched [Taylor's] thing and it bubbled a little. He told me to touch it and I just kinda poked it." *Id.* MV1 saw the bubbles "on the tip." *Id.* During this abuse, MV1 tried to leave the closet, but Taylor prevented her from leaving by holding the door shut. PSR ¶ 14.

In other incidents, Taylor again abused MV1 when alone with her. After Taylor and his then-wife had a fight, Taylor hugged MV1 in bed and then pulled down her pants and underwear. PSR ¶ 15. MV1 remembers trying to pull her clothes back up, but Taylor moved her hand away. *Id.* Taylor tried to kiss her and stuck his tongue into her mouth. MV1 fell asleep and does not know what happened after that. *Id.* In a third incident, Taylor kissed MV1 with his tongue while she was sitting on his lap and the child's mother was in the shower. *Id.*

**C.    Taylor pleads guilty to sexually abusing MV1**

The grand jury returned an indictment charging Taylor with one count of Abusive Sexual Contact of a child in violation of 18 U.S.C. § 2244(a)(5), based on the closet incident in which he forced MV1 to touch his penis until he ejaculated. Dkt. 1. Days before trial, Taylor pleaded guilty. Dkt. 85. As part of that plea agreement, the government agreed to recommend a prison sentence of no more than 96 months. *Id.* ¶ 11.

United States' Sentencing Memorandum - 4
*United States v. Taylor*, CR23-5128 DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

1          **III.     UNITED STATES' SENTENCING RECOMMENDATION**

2     **A.     The PSR correctly calculates the Guidelines range**

3          All sentencing proceedings must begin with a correct Guidelines calculation—the

4     starting point and initial benchmark, which must be kept in mind throughout the

5     sentencing process. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc).

6     A within-Guidelines sentence "will usually be reasonable." *Rita v. United States*, 551

7     U.S. 338, 351 (2007). If a court determines that a sentence outside the Guidelines is

8     warranted, the court "must consider the extent of the deviation and ensure that the

9     justification is sufficiently compelling to support the degree of the variance." *Carty*, 520

10    F.3d at 991 (citation and quotation marks omitted). Although "the Guidelines are

11    advisory rather than mandatory," they are "the product of careful study based on

12    extensive empirical evidence derived from the review of thousands of individual

13    sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007).

14          The government agrees with the PSR's Guidelines calculation. The base level

15    offense is 20 under USSG § 2A3.4. PSR ¶ 20. Taylor's conduct meets that described in

16    18 U.S.C. § 2241(a) or (b). A preponderance of evidence establishes that Taylor placed

17    MV1 in fear and used force. *See United States v. Fulton*, 987 F.2d 631, 633 (9th Cir.

18    1993) ("The force requirement is met when the sexual contact resulted from a restraint

19    upon the other person that was sufficient that the other person could not escape the sexual

20    contact."). By Taylor's own account, he closed a young child in a closet and had her

21    touch his penis until he ejaculated. And the victim reports that she screamed and told

22    Taylor to let her out of the closet. PSR ¶¶ 12–13, 21. Although Taylor offers a conclusory

23    objection to the PSR's facts that MV1 screamed or that he refused to let her out of the

24    closet, Taylor offers no evidence undermining MV1's account. Plus, Taylor apparently

25    does not dispute that MV1 *told* him to let them out of the closet or cried when he abused

26    her. A preponderance of evidence establishes that Taylor committed a sexual act, used

27    force, and placed MV1 in fear. *See United States v. Lucas*, 101 F.4th 1158, 1162–63 (9th

United States' Sentencing Memorandum - 5
*United States v. Taylor*, CR23-5128 DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

1  Cir. 2024) (preponderance standard applies to all Guidelines factfinding). In fact, the *only*

2  evidence before the Court confirms these facts.

3        The government further agrees with Probation (and with Taylor) that a 2-level

4  Guidelines increase applies because MV1 was in Taylor's custody, care, or supervisory

5  control. PSR ¶ 22; Plea Agreement ¶ 9.a. A 4-level increase also applies because MV1

6  had not attained the age of 12 years. PSR ¶ 21.

7        Finally, the government also agrees that Taylor is a repeat and dangerous sex

8  offender against minors under USSG § 4B1.5(b)(1), triggering a further 5-level increase.

9  PSR ¶ 27. This Guidelines provision extends to "any case in which the defendant's

10 instant offense of conviction is a covered sex crime, neither § 4B1.1 nor subsection (a) of

11 this guideline applies, and the defendant engaged in a pattern of activity involving

12 prohibited sexual conduct." USSG § 4B1.5(b); *see, e.g.*, *United States v. Ferguson*, 560

13 F.3d 1060, 1066 (9th Cir. 2009) (applying this enhancement in a child-pornography

14 production case based on defendant's commission of multiple sexual acts against a single

15 minor victim). Taylor committed a "prior sex offense" under Chapter 109A of Title 18 by

16 abusing MV2. He was also convicted of child molestation of MV2, and thus "engaged in

17 a pattern of activity involving prohibited sexual conduct if on at least two separate

18 occasions." USSG §4B1.5 Commentary Note 4(b)(i); *see* Probation Response to Defense

19 Objection 3.

20       With a 3-level reduction for acceptance of responsibility, PSR ¶¶ 28–29, Taylor's

21 total offense level is 28. With a Criminal History Category II, PSR ¶ 34, Taylor's

22 advisory Guidelines range is 87 to 108 months in prison. PSR ¶ 73.

23 **B.**    **The Court should impose the mid-Guidelines sentence recommended by**
24     **Probation**

25       All the relevant 18 U.S.C. § 3553(a) factors support the sentence recommended by

26 Probation: 96 months in prison, plus lifetime supervision. This mid-Guidelines sentence

27 suffices but is no greater than necessary to achieve the statutory sentencing goals.

United States' Sentencing Memorandum - 6
*United States v. Taylor*, CR23-5128 DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

1.    ***The nature, circumstances, and seriousness of Taylor's offenses support the recommended sentence***

Sexual abuse of any kind, but especially against children, attacks our collective decency. *See Kennedy v. Louisiana,* 554 U.S. 407, 413 (2008). Prevention of crimes like Taylor's "constitutes a government objective of surpassing importance." *New York v. Ferber*, 458 U.S. 747, 757 (1982). Indeed, "the protection of our young from sexual abuse may be among the most important functions of a civilized society." *United States v. U.S. Dist. Court for Cent. Dist. of California, Los Angeles, Cal.*, 858 F.2d 534, 541 (9th Cir. 1988).

Taylor sexually abused MV1, a helpless and vulnerable 5-year-old child in his care. Taylor isolated and took advantage of her, forcing her to touch his penis until he ejaculated. Taylor also abused her in other uncharged incidents. And he coached her to lie to investigators when interviewed. Taylor robbed MV1 of her childhood, inflicting psychological wounds that may never fully heal. *Cf. Kennedy,* 554 U.S. at 435("We cannot dismiss the years of long anguish that must be endured by the victim of child rape."). For decades, researchers have documented the staggering prevalence of child sexual abuse in America and the lifelong damage that such abuse inflicts on victims— from heightened suicide risk to increased prevalence of drug and alcohol use and myriad other mental health disorders.[1]

-------

[1] *See, e.g.*, DAVID FINKELHOR ET AL., SEXUAL ABUSE IN A NATIONAL SURVEY OF ADULT MEN AND WOMEN: PREVALENCE, CHARACTERISTICS, AND RISK FACTORS 20–22 (1990); *Adaway v. State*, 902 So.2d 746, 751 (Fla. 2005) ("Researchers have identified a long list of harms caused by child sexual abuse, including 'fears, anxiety, phobias, sleep and eating disturbances, poor self-esteem, depression, self-mutilation, suicide, anger, hostility, aggression, violence, running away, truancy, delinquency, increased vulnerability to revictimization, substance abuse, teenage prostitution, and early pregnancy.' . . . [C]ertain adult psychiatric problems, including eating disorders, personality disorders, and somatization disorder (physical symptoms without medical explanation), can be directly related to child sexual abuse." (citations omitted)); *Petersen v. Bruen*, 792 P.2d 18, 23 n.4 (Nev. 1990) (discussing empirical findings related to harmful effects of child sexual abuse, including that "[a]dult women victimized as children are more likely to manifest depression, self-destructive behavior, anxiety, feelings of isolation and stigma, poor self-esteem, a tendency toward revictimization, and substance abuse," as well as "[d]ifficulty in trusting others and sexual maladjustment"); *J.S. v. R.T.H.*, 714 A.2d 924, 932 (N.J. 1998) ("This Court has recognized that the sexual abuse of children not only traumatizes the victims, but also exacts a heavy toll on society. . . .").

United States' Sentencing Memorandum - 7
*United States v. Taylor*, CR23-5128 DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

And MV1 was not Taylor's only victim: Taylor also molested a second 5-year-old child, MV2, in 2019, and an unconscious adult woman, as charged by the Army in 2016. The mid-Guidelines sentence recommended by Probation accurately reflects the nature, circumstances, and seriousness of Taylor's conduct.

### 2.      *Taylor's history and characteristics support the recommended sentence*

Taylor sexually abused MV1 a decade ago. But his crimes did not start or stop then. He went on to sexually assault an unconscious adult victim in 2016 and to molest another 5-year-old victim (MV2) in 2019. Taylor is a repeat offender and his history and characteristics support the mid-Guidelines sentence that Probation recommends.

Nothing in Taylor's history or characteristics would support a downward variance. Taylor "had a stable upbringing," raised by a father who worked in law enforcement (including at the FBI), a mother who worked as a psychiatric nurse, and a stepmother who worked at Microsoft. PSR ¶¶ 43–45. Taylor grew up with advantages many criminal defendants lack. Taylor also "reports no history of depression." PSR ¶ 58. On the 0-to-10 Adverse Childhood Experiences scale (with 10 being the highest level of childhood trauma), Taylor received a score of just 1. PSR ¶ 62.

One arguably mitigating factor in Taylor's background is his military service. But as discussed, Taylor received a less-than-honorable discharge from the Army after trying to rape an unconscious fellow servicemember. Taylor is also the father of two children; he was diagnosed with PTSD in 2021; and he has a history of alcohol abuse. PSR ¶¶ 58, 63–64. The recommended mid-Guidelines sentence fully accounts for any such mitigating factors and fairly balances them against the severe aggravating factors here.[2]

---

[2] In no event should the government's discussion of aggravating factors be construed as recommending a prison sentence greater than 96 months. The government highlights these points only to explain why the Court should not impose a lower sentence.

### 3.     The recommended sentence promotes respect for the law, provides just punishment, and affords adequate deterrence

The recommended mid-Guidelines sentence meets the sentencing factors to promote respect for law while balancing punishment and deterrence. Taylor's crimes reveal a man who lacks empathy and who prioritized his own pleasure over others' pain. Taylor is also no stranger to the justice system; this is his third criminal sex offense. The government hopes that a 96-month sentence, coupled with lifetime supervised release, will prevent Taylor from reoffending again.

### 4.     The recommended sentence protects the public

A significant prison sentence followed by lifetime supervised release is the only reliable way to protect future victims from Taylor. Close-relation child sexual assaults occur when trusted adults exploit our most vulnerable population. Adults commit these crimes, as Taylor did, when they know a child is isolated and alone. Offenders violate a child's trust and boundaries. The effects on victims are often lifelong. And MV1 was not Taylor's only victim. Taylor also molested MV2 (another 5-year-old child) and tried to rape an unconscious female adult victim. The danger that Taylor poses to the community is obvious. A mid-Guidelines 96-month sentence and a lifetime term of supervised release, as recommended by Probation, will protect the public from him.

### 5.     The recommended sentence avoids unwarranted sentence disparities

Finally, the mid-Guidelines sentence recommended by Probation will "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Congress's main goal with section 3553(a)(6) was to promote nationwide consistency in sentencing, *United States v. Jaycox*, 962 F.3d 1066, 1071 (9th Cir. 2020)—that is, to avoid "unjustified difference" across judges or districts. *United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007). The Guidelines are the best tool for achieving that goal. A court that correctly calculates and carefully reviews the Guidelines

United States' Sentencing Memorandum - 9
*United States v. Taylor*, CR23-5128 DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

range "necessarily" gives "significant weight and consideration to the need to avoid unwarranted disparities." *Gall*, 552 U.S. at 54. Indeed, the Guidelines "are themselves an anti-disparity formula," so "a sentence below or within a properly calculated Guidelines range . . . necessarily complies with § 3553(a)(6)." *United States v. Perez*, 21 F.4th 490, 494 (7th Cir. 2021) (quotation marks and citations omitted); *see Rita v. United States*, 551 U.S. 338, 354 (2007). The Ninth Circuit has thus struggled to imagine how a within-Guidelines sentence could ever create an unwarranted disparity. *United States v. Osinger*, 753 F.3d 939, 949 (9th Cir. 2014). Whether a defendant can "point to other criminal defendants who may have received lighter sentences under materially different circumstances" does "not matter" under this analysis. *United States v. Espinoza-Baza*, 647 F.3d 1182, 1195 (9th Cir. 2011) (cleaned up).

The recommended mid-Guidelines sentence avoids creating any unwarranted sentencing disparity. By contrast, a dramatic downward variance—as Taylor will likely request—would risk creating such an unwarranted disparity.

## IV.    CONCLUSION

For all these reasons, the Court should impose the sentence recommended by the Probation Office: 96 months in prison, lifetime supervised release, and the mandatory $100 special assessment.

DATED this 8th day of November 2024.

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

 s/ Hillary Stuart
HILLARY STUART
ERIKA EVANS
Assistant United States Attorneys
United States Attorney's Office
1201 Pacific Avenue, Suite 700
Tacoma, WA 98402
Phone: (253) 428-3665
Email: hillary.sturt@usdoj.gov

United States' Sentencing Memorandum - 10
*United States v. Taylor*, CR23-5128 DGE

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800