THE HONORABLE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR23-5128-DGE |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MR. TAYLOR'S SENTENCING |
| | ) | MEMORANDUM |
| CAMERON JAMES TAYLOR, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Mr. Taylor comes before this Court for sentencing on one count of Abusive Sexual Contact with a Child under 12 pursuant to 18 U.S.C. § 2244(a)(5) and § 22446(3).

## I.    BACKGROUND

Mr. Taylor enlisted in the Army in 2003, inspired to serve the country by the events of 9/11. For the next 12 years, Mr. Taylor had a successful career in the Army, rising to the rank of Staff Sergeant. He earned glowing performance evaluations. Ex. A. He received a number of awards. Ex. B. In his last evaluation prior to the May 2015 incident that resulted in his separation from the military, the rater noted that Mr. Taylor was on track to be promoted to Sergeant First Class, and recommended he be sent to Senior Leaders Course. Ex. A at 13. Unfortunately, Mr. Taylor's career ended abruptly, and he was discharged from the Army in 2016.

After his return to the United States, Mr. Taylor's marriage began to unravel. He was drinking heavily, although he did complete SUD treatment in 2018. PSR ¶ 52. He

MR. TAYLOR'S SENTENCING
MEMORANDUM
(*United States v. Taylor*, CR23-5128-DGE.) - 1

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1  relapsed after treatment and was eventually arrested in 2019 on the King County

2  offense. PSR ¶ 52. His wife filed for divorce while the King County case was pending.

3  The court overseeing the couple's dissolution put in place a stringent parenting plan,

4  requiring Mr. Taylor to engage in treatment, have only supervised visits, and pass a UA

5  prior to any visitation.

6      After his release from custody in King County, Mr. Taylor did very well on

7  supervision. He participated in domestic violence treatment and successfully completed

8  a two-year sex offender treatment program. Ex. C. He found stable housing in Seattle

9  and had no violations while on state or federal supervision. PSR ¶ 32.

10  **II.    OBJECTIONS TO THE PSR**

11      **A.    Objection to the Application of U.S.S.G. § 4B1.5(b)**

12      Mr. Taylor objects to the application of U.S.S.G. § 4B1.5(b), which would deem

13  Mr. Taylor a "Repeat and Dangerous Sex Offender" and add an additional 5 points to

14  his offense level. This provision was enacted pursuant to a congressional directive to

15  the Commission:

16

17

18

19

20

21

22

23

24

> **SEC. 505. INCREASED PENALTIES FOR PATTERN OF ACTIVITY OF SEXUAL EXPLOITATION OF CHILDREN.**
>
> Pursuant to its authority under section 994(p) of title 28, United States Code, the United States Sentencing Commission shall—
>
> (1) review the Federal Sentencing Guidelines on aggravated sexual abuse under section 2241 of title 18, United States Code, sexual abuse under section 2242 of title 18, United States Code, sexual abuse of a minor or ward under section 2243 of title 18, United States Code, coercion and enticement of a minor under section 2422(b) of title 18, United States Code, contacting a minor under section 2422(c) of title 18, United States Code, and transportation of minors and travel under section 2423 of title 18, United States Code; and
>
> (2) upon completion of the review under paragraph (1), promulgate amendments to the Federal Sentencing Guidelines to increase penalties applicable to the offenses referred to in paragraph (1) in any case in which the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor.

25

26

MR. TAYLOR'S SENTENCING
MEMORANDUM
(*United States v. Taylor*, CR23-5128-DGE.) - 2

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1   Public Law 105-314, Section 505. The Guideline itself does not define the term

2   "covered sex crimes." The application notes to § 4B1.5 state that "a covered sex crime"

3   encompasses a much broader array of statutes than those enumerated in section 505.

4           Commentary to the Guidelines should "be treated as an agency's interpretation

5   of its own legislative rule." *Stinson v. United States*, 508 U.S. 36, 44 (1993). However,

6   courts should give deference to agency interpretation *only* when "the regulation is

7   genuinely ambiguous." *Kisor v. Wilkie*, 588 U.S. 558 (2019). A court should not

8   "jump[] the gun in declaring the regulation ambiguous." *Id.* at 589. Instead, a court

9   must "bring all its interpretive tools to bear before finding that to be so." *Id*. In *Kisor*,

10  the Court vacated the lower court's deference to the agency's interpretation of the term

11  "relevant records" in a VA regulation. *Id*. The Court directed the circuit court to "make

12  a conscientious effort to determine, based on indicia like text, structure, history, and

13  purpose, whether the regulation really has more than one reasonable meaning." *Id*. at

14  590.

15          The Ninth Circuit held that "[t]he more demanding deference standard

16  articulated in *Kisor* applies to the Guidelines' commentary." *United States v. Castillo,*

17  69 F.4th 648 (9th Cir. 2023).

18          Here, section 505 specifically directs the Commission to increase the penalties

19  applicable *to the offenses referred to in paragraph (1)*, which is a small subset of the

20  offenses in application note 2. The only reasonable meaning of the term "covered sex

21  offenses" in the Guideline are those offenses listed in section 505. The Guideline is not

22  genuinely ambiguous, and the Court should not give deference to the alternate

23  interpretation in the application note.

24          In its response, probation states that 4B1.1 is "ambiguous" because by reading

25  the guideline, one cannot determine what constitutes a "covered sex crime." PSR at

26  page 18-19. However, this is the method of interpretation that *Kisor* specifically warns

MR. TAYLOR'S SENTENCING
MEMORANDUM
(*United States v. Taylor*, CR23-5128-DGE.) - 3

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1  against. "[O]nly when that legal toolkit is empty and the interpretive question still has

2  no single right answer can a judge conclude that it is 'more [one] of policy than of

3  law.'" *Id*. at 575.

4         As the *Kisor* Court explained, "*Auer* deference (as we now call it) as rooted in a

5  presumption about congressional intent." *Id.* at 569. "Congress, when first enacting a

6  statute, assigns rulemaking power to an agency and thus authorizes it to fill out the

7  statutory scheme." *Id.* at 572. Looking at the legislative history here, Congress directed

8  the Sentencing Commission to increase the penalties for a limited list of offenses when

9  the defendant engaged in a pattern of abuse. Congress was thus directing the agency to

10 determine *how* to implement the aggravator —for example, how to apply the Guidelines

11 to increase the offense level—but was *not* delegating the list of offenses to which the

12 aggravator should apply. Here, Mr. Taylor is not convicted of any of the offenses listed

13 in Public Law 105-314, Section 505(1), so § U.S.S.G. § 4B1.5(b) does not apply.

14        **B.      The Cross Reference Provision does not apply**

15        Mr. Taylor agrees with Probation that the cross reference in U.S.S.G. § 2A3.1 to

16 U.S.S.G. § 2A3.4(c)(1) does not apply. Mr. Taylor pled under 18 U.S.C. § 2246(3), that

17 he had sexual contact, in this case, touching of genitalia. Intentional touching of

18 genitalia is "sexual contact"; only touching of the genitalia of a person under 16 is a

19 "sexual act." 18 U.S.C. § 2246(3), (1)(D).  18 U.S.C. § 2244 defines the maximum term

20 for offenses. Here, in the plea agreement, the parties agreed that 18 U.S.C. § 2244(5)

21 applied; that *had* the sexual contact been a sexual act, it would have violated §2241(c),

22 which applies to acts with children under 12. Mr. Taylor was not thereby agreeing that

23 he was admitting to conduct constituting a sexual act.

24        Here, the statement of facts says that Mr. Taylor told MV1 to touch his penis

25 while it was exposed. Dkt. 85 at ¶ 8(a). This particular set of facts is sexual contact, and

26 does not fit the definition of a "sexual act" (because Mr. Taylor was not under 16). The

MR. TAYLOR'S SENTENCING
MEMORANDUM
(*United States v. Taylor*, CR23-5128-DGE.) - 4

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1  cross reference in § 2A3.4(c)(1) only applies "if the offense involved criminal sexual

2  abuse or attempt to commit criminal sexual abuse (as defined in 18 U.S.C. § 2241 or

3  § 2242)." Both § 2241 and § 2242 require a "sexual act." The cases cited by the

4  government involve offenses where the defendant admitted to sexual acts. *See. e.g.,*

5  *United States v. Morgan*, 164 F.3d 1235 (9th Cir. 1999) (defendant admitted to sexual

6  intercourse with victim while she was incapacitated). Whether or not the Court finds

7  force was used (which Mr. Taylor strenuously denies), is not relevant to whether the

8  cross reference applies, because both § 2241 and § 2242 require force *and* a sexual act.

9  *See*, § 2241(a), § 2242(1).

10          **C.          Objection to use of force**

11                  **1.          The MV1's recollection of the details surrounding the offense
                                  are not reliable enough for the Court to consider as a basis to**
12                                **apply the aggravator.**

13          In this case, MV1 did not tell anyone else about the incident underlying this case

14  until many years later, in 2021. PSR ¶ 11. During her forensic interview, MV1 said she

15  didn't have recall of the event until the first year of middle school, or around the time of

16  Mr. Taylor's arrest in the King County case.[1]

17

18          [F]or the small subset of complainants who believe their memories of the
            abuse have not been continuously available to recall we argue that in the
19          absence of evidence that the memory-recovery process environment was
            tainted by suggestive influences, there is, at present, no reason to argue
20          that these memories should be treated with greater skepticism than other
            memories of a similar age. On the other hand, when the memory-recovery
21          environment did include highly suggestive influences, the research
            suggests that the memory reports should be scrutinized very carefully and
22          skepticism is appropriate.[2]

23          _____

24  [1] Dkt. 37-5 at page 22 of transcript, line 9-10. MV1 began 9th grade in 2021.

25  [2] Connolly, Deborah & Read, John. (2003). *Remembering Historical Child Sexual
    Abuse*. Criminal Law Quarterly. 47. Available at
26  https://www.researchgate.net/publication/265184675_Remembering_Historical_Child_
    Sexual_Abuse

MR. TAYLOR'S SENTENCING
MEMORANDUM
(*United States v. Taylor*, CR23-5128-DGE.) - 5

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1    Here, MV1 remembered the incident in the closet around the time that Mr.

2    Taylor was arrested for the King County case, and while her parents were in a very

3    turbulent part of their relationship. Mr. Taylor has endorsed the facts of the incident as

4    contained in the statement of facts in the plea, but the government asks the Court to

5    enhance his sentence based on additional facts not admitted in the plea agreement. The

6    details surrounding MV1's recovered recollection are not sufficiently reliable for the

7    Court to rely upon to enhance the sentence here.

8
9
> **2.     Even if the Court does find MV1's recollection of the details around the incident reliable, the facts alleged do not constitute "force" for the purposes of §2A3.4(a)(1).**

10    The base offense is 20 "if the offense involved conduct described in 18 U.S.C.

11    § 2241(a) or (b)." The only subsection potentially relevant to this case is § 2241(a), that

12    the defendant caused another person to engage in the sexual contact "by using force

13    against that other person" or "by threatening or placing that other person in fear that any

14    person will be subjected to death, serious bodily injury, or kidnapping." Here, probation

15    found a base offense level of 20 based on MV1's allegations that Mr. Taylor held the

16    door closed and did not let MV1 out when she asked. PSR ¶ 20. MV1's statement is

17    contained in the record as dkt. 37-5 (transcript) and 37-7 (interview). In sum, she says

18    she went into a closet with Mr. Taylor, he then held the door closed despite her pleas to

19    leave, and told her to touch his exposed penis, which she eventually did. Dkt. 37-5 at

20    17-23.

21    Even if the Court considers the allegations in the light most favorable to the

22    victim, they do not rise to the level of "force" required to increase the offense level.

23    It is instructive to compare 2241 with 2242:

24
25
26
> When read together, Sections 2241(a) and 2242(1) demonstrate Congress's graded approach to criminalizing sexual assault. Aggravated sexual abuse requires the jury to "find that the defendant (1) actually *used force* against the victim *or* (2) that he made a *specific kind* of threat—i.e.

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

that he threatened or placed the victim in fear of death, serious bodily injury, or kidnapping." *Cates*, 882 F.3d at 737 (emphasis in original); *see also H.B.* 695 F.3d at 936. In contrast, sexual abuse "encompasses the use of any [other] kind of threat or other fear-inducing coercion to overcome the victim's will." *Cates*, 882 F.3d at 737. "Threats or fear-inducing coercion of a lesser nature can support a conviction for the crime of sexual abuse under § 2242(1) but not aggravated sexual abuse under § 2241(a)(2)." *Id*.

*United States v. Shaw*, 891 F.3d 441, 448 (3d Cir. 2018) (footnote removed). Here, MV1 makes no allegation that Mr. Taylor threatened her, or that he grabbed her hand and put it on his penis. *Compare*, *United States v. Fulton,* ("force" used when the defendant would force the victim to lie down and touch her private parts, grab victim in a bear hug, lie on top of the victim while she was face down); *United States v. Archdale*, 229 F.3d 861, 868 (9th Cir. 2000) (defendant moved minor victim's head up and down on his penis and "got on top of her").

Here, the base offense level is 16, because the offense was either coerced, or done with a person incapable of appraising the nature of the conduct. § 2A3.4(2); 18 U.S.C. § 2242(2)(A), (3).

## III.    GUIDELINE CALCULATION

- Base offense level of 16. §2A3.4(a)(2)
- Increase to level 22 for victim under 12 (apply the higher of base offense level +4 or 22). §2A3.4(b)(1)
- +2 for victim in the custody or care of the defendant. §2A3.4(b)(3)
- –3 for acceptance of responsibility.
- Total offense level of 21

Mr. Taylor is in criminal history category II, resulting in a guideline sentence of 41-51 months.

MR. TAYLOR'S SENTENCING
MEMORANDUM
(*United States v. Taylor*, CR23-5128-DGE.) - 7

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

## IV.    SUPERVISED RELEASE CONDITIONS

### A.    Sexual Deviancy Treatment Conditions

Mr. Taylor objects to condition #1 and 2, related to sexual deviancy treatment. Mr. Taylor completed a two-year program just prior to entry of this plea. This offense reflects old conduct, not new behavior that occurred after Mr. Taylor completed treatment. And as the report from Dr. Hirsh states, he was aware of Mr. Taylor's pending charges in this case and addressed them in the course of therapy. Mr. Taylor would not have an objection to polygraph testing as a condition of supervision, independent of an SOTP treatment program.

### B.    Location restrictions

Mr. Taylor respectfully requests the Court not impose the portion of proposed condition 6 that prohibits Mr. Taylor from going to places "where minors are known to congregate" as vague, and more restrictive than necessary. Nothing in Mr. Taylor's history involves incidents outside his home. If the Court does impose some location restrictions, he requests it be modified to a radius of 25 feet and that he be allowed to go to parks (but not playgrounds) and swimming pools during adult-swim hours. Exercise is important to Mr. Taylor's recovery, and if he returns to an urban area like Seattle after his release, it will be very difficult to exercise if he is not able to run or walk through any park, or swim at a pool during adult swim hours.

### C.    Contact with Minors

Mr. Taylor requests that condition #8, no contact with children under 18, be modified to prohibit only direct contact, and prohibit direct contact with children under 16, not 18. The SR condition endorsed by this Court in General Order 10-16 reads:

> You must not have direct contact with any child you know or reasonably should know to be under the age of 18, [including][not including] your own children, without the permission of the probation officer. If you do have any direct contact with any child you know or reasonably should know to be under the age of 18, [including][not including] your own

MR. TAYLOR'S SENTENCING
MEMORANDUM
(*United States v. Taylor*, CR23-5128-DGE.) - 8

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

children, without the permission of the probation officer, you must report this contact to the probation officer within 24 hours. Direct contact includes written communication, in-person communication, or physical contact. Direct contact does not include incidental contact during ordinary daily activities in public places.

This condition better apprises Mr. Taylor of what kind of contact is prohibited.

As to the age limitation, Mr. Taylor has completed a culinary program and worked as a chef in restaurants. PSR ¶ 65, 68. Restaurants often employ workers who are 16 or 17. In July of 2023, the Court modified Mr. Taylor's conditions of release to allow him to work in the back of the house at a restaurant, provided his supervisor was aware of his history and he was not in a position of authority over anyone under 18. Dkt. 24. The modification was supported by his treatment provider. Dkt. 22. Mr. Taylor respectfully requests the supervised release condition be modified in a similar way.

Finally, Mr. Taylor requests that contact with his other child (not MV1) be permitted in accordance with the parenting plan established by the King County Court. The appearance bond in this case allowed contact pursuant to the parenting plan. Dkt. 11.

### D.    Possession of Sexually Explicit Material

Mr. Taylor's offense does not involve possession of sexually explicit images. A search condition to look for visual depictions (in proposed condition 11) is more restrictive than necessary and not connected to the facts of this particular case. Similarly, Mr. Taylor objects to any restriction on possession of any images that are otherwise legal to possess, i.e., sexually explicit conduct involving adults. Such a condition is not related to this particular case, and unnecessarily infringes on Mr. Taylor's First Amendment rights.

## V.    SENTENCE RECOMMENDATION

Mr. Taylor respectfully requests the Court sentence him to 48 months in custody, followed by 5 years of supervised release. A sentence of 48 months is a significant

MR. TAYLOR'S SENTENCING
MEMORANDUM
(*United States v. Taylor*, CR23-5128-DGE.) - 9

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

1  sentence and will acknowledge the harm Mr. Taylor caused to MV 1. Mr. Taylor has

2  demonstrated that he can be well supervised in the community. He did well on DOC

3  supervision and had no violations during his time on an appearance bond in this case.

4  PSR ¶ 32. He maintained his sobriety while on supervision. He completed a sex

5  offender treatment program with Dr. Hirsch. Ex. C.

6      Part of the basis for probation's recommendation is that Mr. Taylor could receive

7  sex offender treatment while in custody. Prob. Rec. at 7. Based on data from the Bureau

8  of Prisons, treatment spots are extremely limited. According to a recent report to

9  Congress, the Sex Offender Treatment Program available to BOP inmates has a current

10  capacity of 239 and 4,333 inmates are awaiting placement in treatment. [3] "Since the

11  implementation of the current program model in 2005, 1,849 inmates have completed a

12  Sex Offender Treatment Program." *Id*. The likelihood is that Mr. Taylor will not get

13  any treatment while in custody, and the Court should not base a sentencing decision on

14  the assumption that such treatment will be provided to him.

15      As the Court can see from his performance evaluations, Mr. Taylor was a hard-

16  working professional, who advanced through the ranks of the Army. Ex. A. The one

17  through line for Mr. Taylor's prior offenses is alcohol. Federal Probation is very

18  effective at monitoring offenders for substance use, and promptly addressing any

19  violations. And Mr. Taylor has done very well on both state and federal supervision. A

20  48-month sentence is sufficient, but not greater than necessary, to provide adequate

21  deterrence and protect the public.

22

23

24

25
26  [3] United States Department of Justice, *Federal Prison System: FY 2024 Performance Budget*, page 44. Available at https://www.justice.gov/d9/2023-03/bop_se_fy_2024_pb_narrative_omb_cleared_3.23.2023.pdf

MR. TAYLOR'S SENTENCING
MEMORANDUM
(*United States v. Taylor*, CR23-5128-DGE.) - 10

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1

## VI.    CONCLUSION

2    Mr. Taylor respectfully requests the Court sentence him to 48 months and 5

3 years of supervision.

4    DATED this 29th day of January, 2025.

5
            Respectfully submitted,
            s/ *Heather Carroll*
6            Assistant Federal Public Defender
            Attorney for Cameron James Taylor
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MR. TAYLOR'S SENTENCING
MEMORANDUM
(*United States v. Taylor*, CR23-5128-DGE.) - 11

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**